UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHELLE MOFFETT, et al., | } |
| Plaintiffs, | } |
| v. | } Case No.: 2:22-cv-00255-RDP |
| TOWN OF BROOKSIDE, et al., | } |
| Defendants. | } |

## **MEMORANDUM OPINION**

This case is before the court on Defendant Town of Brookside's Motion to Dismiss or, Alternatively, for Summary Judgment (Doc. # 18) and Defendant Ivory Price's Motion for Summary Judgment. (Doc. # 22). The Motions have been full briefed (Docs. # 21, 23, 26-30) and are ripe for review. For the following reasons, the Motions (Docs. # 18, 22) are due to be denied.

**I.     Background**[1]

On February 9, 2020, Plaintiff Michelle Moffett ("Michelle") was driving on Interstate-22 with her daughter, Plaintiff Kierra Moffett, and four-year-old grandson. (Doc. # 16 at 2). As Michelle exited the interstate onto Cherry Avenue, Defendant Ivory Price, a Brookside police officer, initiated a traffic stop. (*Id.*).

Officer Price informed Michelle that the reason he stopped was her failure to use a turn signal when changing lanes in violation of Alabama Code § 32-5A-134. (Doc. # 21, Ex. A; Doc.

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the non-moving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

# 18-1). Michelle did not contest her failure to use a turn signal at that time, and she later pled guilty to the citation. (Doc. # 18-1).

During the stop, Officer Price asked Michelle whether she had proof of insurance. (Doc. # 21, Ex. A). She replied that she had changed purses earlier that day and did not think she had her insurance card. (*Id.*). Officer Price went back to the patrol car and when he returned told Michelle he was unable to electronically verify that she had insurance. (*Id.*). He then informed her that, because she could not provide proof of insurance, he was going to have her car towed and impounded. (*Id.*).

He also stated that the car appeared to be registered in someone else's name. (*Id.*). According to Michelle, the person that Officer Price referenced is the individual she had purchased the car from. (*Id.*). Michelle presented several different papers from the glove compartment evidencing the purchase. (*Id.*). These documents included the bill of sale, tag receipt, and registration, each of which confirmed Michelle was the car's rightful owner. (Doc. # 27-1 at 1, 6-9). But, Michelle did not produce any information proving insurance coverage. (Docs. # 21, Ex A.; 27-1 at 1, 6-9).

Officer Price instructed Plaintiffs to exit the car, and he conducted a brief search of the vehicle and its contents, including Plaintiffs' purses. (Doc. # 21, Ex. A). He allowed Plaintiffs to call someone to arrange to be picked up, and the car was not towed until the person picking them up arrived. (*Id.*).

The very next morning, Michelle visited the DMV. (Doc. # 26 ¶¶ 4-5). DMV records confirmed she was the registered owner of the vehicle and that she had current liability insurance. (*Id.*). Plaintiffs have provided to the court a copy of this document, which is dated February 10, 2020 (the day after the traffic stop). (Doc. # 26-1 at 12-13).

Michelle is one of many people whose cars have been towed by Brookside police officers since 2018, when Police Chief Michael Jones was appointed. (Doc. # 16 ¶ 45). Brookside police towed only 50 vehicles in 2018, but that number skyrocketed to 508 in 2019 and 789 in 2020. (*Id.*). Brookside police officers also began issuing significantly more traffic citations under the leadership of Chief Jones. There were 382 citations entered in 2018 but that number climbed to 3,024 in 2020. (*Id.* ¶ 54). This exponential increase in citations issued was accompanied by a corresponding rise in revenue from fines and forfeitures: from $82,467 in 2018 to over $610,000 in 2020. (*Id.* ¶ 48). When asked about this significant revenue increase, Chief Jones called it a "positive story" and stated he would like to see even greater growth in revenue from fines and forfeitures in the future. (*Id.* ¶ 58).

A state audit of Brookside's finances raised questions about how the Town collected and spent these increased revenues. (*See* Doc. # 27-6). According to the audit, Brookside "did not ensure that all amounts collected were for offenses included in the Town's ordinances and that the provisions of their ordinances were consistently applied." (*Id.* at 8). Moreover, the auditors found that Brookside "did not ensure approval of expenditures from the Police Department account were obtained as required by Town ordinance." (*Id.* at 3).

When Brookside police impounded a vehicle, the car's owner paid a $175 impound fee directly to the Police chief or his designee, which was then deposited directly into the police department's bank account. (*Id.* at 4-5). However, an analysis of a random sampling of these fees revealed that "thirty-six percent of the payments were made in response to offenses that were not listed in the Town's ordinances." (*Id.* at 6). Thus, the state audit concluded that "the absence of controls . . . may prevent the Town from complying with applicable laws and regulations." (*Id.* at 8).

## II. Standard of Review

### A. Standard for Converting a Rule 12(b)(6) Motion to Dismiss into a Rule 56 Motion for Summary Judgment

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Defendant Town of Brookside's Motion to Dismiss or, Alternatively, for Summary Judgment (Doc. # 18) presents matters outside the pleadings—namely, body camera footage of the traffic stop. For this reason, the court treats it as a Motion for Summary Judgment and finds the parties have had ample opportunity to present all relevant material and briefing.

### B. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial by pointing to affidavits, depositions, answers to interrogatories, and/or admissions on file. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts

and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 248 ("[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'") (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)) (cleaned up).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

Although the court must resolve all reasonable doubts in favor of the non-movant, this does not mean the court cannot rely on objective videotape evidence. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, if a videotape clearly depicts events and leaves no material factual disputes, the court need not rely on one party's version of facts when they are obviously discredited by that undisputed video evidence. *Id.* at 380-81.

**III.    Analysis**

After careful review and for the reasons state below, the court concludes that the motions before it (Docs. # 18, 22) are due to be denied.

> **A.    A reasonable jury could find that Officer Price violated Plaintiffs' Fourth Amendment rights by illegally impounding Michelle Moffett's car and detaining and searching both Plaintiffs incident to the impoundment.**

Plaintiffs claim that Defendants Brookside and Price violated the Fourth Amendment by towing Michelle's car (Counts I & II), searching the car and both Plaintiffs' purses (Counts III &

6

IV), and detaining Plaintiffs while Officer Price searched and towed the car (Count VI). (Doc. # 16). Plaintiffs also assert two related state law claims against Defendant Price for false imprisonment under Alabama law (Counts V and VII). (*Id.*)

The key issue underlying all of Plaintiffs' claims is whether Officer Price was legally authorized to tow and impound Michelle's car.[2] Defendants argue that the towing was permitted by Alabama Code § 32-7A-16. (Doc. # 18 at 8-9). The statute provides:

> A motor vehicle may be impounded at the discretion of a law enforcement officer if the operator fails to provide evidence of registration and insurance as required by this title or Title 40. Evidence of registration and insurance may be verified through the online insurance verification system and other electronic means as necessary.

Ala. Code § 32-7A-16(c). It is undisputed that during the traffic stop Michelle did not provide documentation of liability insurance for her vehicle. However, there is a genuine dispute about whether Officer Price verified Michelle's insurance electronically. Officer Price told Michelle that the online insurance verification system did not confirm her insurance. (Doc. # 21, Ex. A). However, Michelle went to the DMV the very next morning and obtained verification of her car's liability insurance, which she corroborated by submitting a dated copy of that DMV record. (Doc. # 26-1 at 12-13).

According to Michelle, if her insurance information was in the DMV system, it follows that it was in the police department's system as well. (Doc. # 28 at 11-12).[3] Based on this, Michelle contends that Officer Price was being untruthful when he claimed her insurance information was

---

[2] Defendants contend that, if Officer Price was authorized to tow and impound Plaintiff's vehicle, it was reasonable to briefly prolong the traffic stop to inventory the vehicle's interior and contact the towing company. (Doc. # 23 at 15).

[3] Indeed, in Defendant Price's Brief supporting his Motion for Summary Judgment, he states that the "information provided *from the Alabama DMV* on his patrol cruiser computer correctly showed that the vehicle did not currently have liability insurance in force and effect in Plaintiff's name". (Doc. # 23 at 7) (emphasis added).

7

not in the online verification system; thus, she argues, Officer Price willfully ignored proof that she had insurance and towed her car anyway. (*Id.*).

Deciding this issue would require determining credibility and weighing the evidence, which is not the court's role at this stage. *See Anderson*, 477 U.S. at 249. Plaintiffs have pointed to a genuine dispute of material fact which must be resolved by a trier of fact; therefore, summary judgment is inappropriate.

### B. A reasonable jury could find that Defendant Brookside caused the alleged constitutional violations by executing a policy, practice, or custom encouraging police to unlawfully impound vehicles during traffic stops.

Municipalities can be held liable for a § 1983 violation only if a plaintiff can establish that the entity itself actually caused the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Howell v. Evans*, 922 F.2d 712, 724 (11th Cir. 1991). A plaintiff cannot establish § 1983 liability based on *respondeat superior*; rather, the plaintiff must show that the municipal employee who committed the alleged constitutional violation was acting pursuant to "an officially promulgated policy" or "an unofficial custom or practice". *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). An unofficial custom or practice may be established by a "pattern of similar constitutional violations." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Here, Plaintiffs claim that "Brookside has operated its police and court system with a primary objective of obtaining revenue from motorists and has had a continued practice of stopping and searching scores of vehicles daily, doing so without probable cause or reasonable suspicion of wrongdoing." (Doc. # 16 ¶ 55). They further contend that "Police Chief Jones was directly responsible for implementing these policies and practices and actively participated in them". (*Id.*

¶ 61). Plaintiffs assert that Officer Price acted pursuant to these policies and practices when he detained and searched Plaintiffs and impounded Michelle's car. (*Id.* ¶ 45).

At this stage of the litigation, Plaintiffs have presented sufficient evidence that creates a genuine factual issue for trial. *See Celotex*, 477 U.S. at 324. Plaintiffs have put forward substantial evidence showing that after Police Chief Jones was appointed in 2018 there was a marked increase in traffic citations issued and vehicles impounded, which was accompanied by a meteoric rise in municipal revenue from fines and forfeitures. (Doc. # 16 ¶¶ 45-58). The Police Chief even commented on this rise in revenue, noting that he would like to see an even greater increase. (*Id.*). Moreover, when Brookside police impounded a car, the required $175 fee was paid directly back to the police department, and a state audit found that thirty-six percent of these fees were paid for offenses that were not listed in any Brookside ordinances. (Doc. # 27-6).

Defendant Brookside argues that Plaintiffs have not provided enough evidence of an unconstitutional policy or custom, (Doc. # 18 at 12), but it does not address (and therefore has not contested) any of the above-mentioned facts, nor does it explain why that evidence is insufficient to avoid summary judgment. Defendant Brookside has failed to show that "there is no genuine issue as to any material fact." *See Celotex*, 477 U.S. at 322. Rather, on this Rule 56 record, resolving any reasonable doubts in the non-movant's favor, a reasonable jury could find that Brookside had a practice or custom of issuing traffic citations and impounding vehicles without justification in order to generate revenue.

## IV. Conclusion

For the foregoing reasons, Defendant Town of Brookside's Motion to Dismiss or, Alternatively, for Summary Judgment (Doc. # 18) and Defendant Ivory Price's Motion for Summary Judgment (Doc. # 22) are due to be denied. A corresponding Order will be entered.

**DONE** and **ORDERED** this November 16, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE